**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LAURA GRIFFIN, TONY PARSONS, and SANDY KLOSTER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 18 C 5755** |
| ) | |
| **SAFEGUARD PROPERTIES MANAGEMENT, LLC; ALLY BANK; CENLAR FSB; KAYLA ENTERPRISES, LLC; ML PROPERTY INSPECTIONS, INC.; ALISSA LLC; MARIO LOPEZ; and MOHAMMAD AL ISSA,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs filed suit against the defendants asserting claims for: violations of

the Illinois Consumer Fraud and Deceptive Practices Act (Count 1); trespass to real

property and chattels (Count 2); conversion (Count 3); invasion of privacy (Count 4);

breach of contract (Count 5); negligent hiring/retention (Counts 6, 7, and 8); negligent

hiring (Count 9); fraudulent misrepresentation (Count 10); civil conspiracy (Count 11);

and violations of the Fair Debt Collection Practices Act (Count 12).[1] The defendants

move for summary judgment on all counts.

---

[1] On January 8, 2020, plaintiffs gave notice of Sandra Kloster's death, pursuant to
Federal Rule of Civil Procedure 25(a)(1). Because the remaining plaintiffs failed to file a
motion to substitute an estate, the Court dismisses Kloster's claims. *See* Fed. R. Civ. P.
25(a)(2); *see also Hofheimer v. McIntee*, 179 F.2d 789, 791 (7th Cir. 1950).

**Facts**

Laura Griffin owned the three-floor Chicago home at the center of this dispute. She leased that home to Tony Parsons, who lived alone on the basement floor from 2016 to 2017. Ally Bank held the mortgage to the home. Ally subcontracted to Cenlar FSB, which serviced the mortgage. Cenlar subcontracted to Safeguard Properties Management, which provided mortgage field services, including property preservation and repair services. And Safeguard subcontracted to Alissa LLC, which provided property preservation services. Alissa is owned and operated by Mohannad Al Issa.[2]

In 2015, Cenlar informed Griffin that she had defaulted on her mortgage and, in November of that year, she was served with a summons and a mortgage foreclosure complaint. By the terms of the mortgage, in case of default or abandonment, Ally was empowered to secure and repair the home. On August 20, 2017, Mario Lopez—a Safeguard subcontractor since dismissed from this suit—inspected the exterior of the home and determined it was vacant. He made this determination based, in part, on an unmaintained backyard, discontinued electrical service, and no personal items visible through the windows. Lopez left a sticker on the home that indicated that the property was vacant and instructed the reader to call Safeguard. He also reported his findings to Safeguard. But the home wasn't vacant; Parsons still lived there. And both Parsons and Griffin testified that, contrary to Lopez's report, the electricity was still on at the home.

Based on Lopez's report, Safeguard sent Alissa an order to "lock" and "winterize"

---

[2] The Court will refer to Alissa and Al Issa collectively as "Alissa," except where otherwise noted.

the home. The order was dated August 23, 2017, and stated that no work should be completed if the home was occupied. Alissa performed interior property preservation work on August 23, 2017, and reported that although the first two levels were vacant, the basement appeared occupied. Alissa employees changed the locks for all exterior doors to the home. A handwritten note was left on the property: "Please take your stuff and leave the house ASAP. Bongard have new owner."

On August 24, many things happened. Parsons wasn't at home when the Alissa employees changed the locks, so when he returned on August 24, he wasn't able to access the property. He contacted Griffin, who contacted her attorney. Griffin's attorney sent a cease and desist letter to Safeguard and to Ally's attorneys in the foreclosure action against Griffin. Cenlar reported the home as occupied, and a Safeguard employee placed an internal flag on the loan to cease any further property preservation activity.

Despite this, property preservation activity did not stop. On August 26, Al Issa of Alissa and two other individuals returned to the home and performed additional property preservation work, including taking photos of the basement. When Parsons returned home, he found a handwritten note on his apartment's front door. The note read: "Please take your stuff and Leave the Hous ASAP. Bangard Have New Owner. Thank yous." The note was written on the back of what the plaintiffs allege is a Safeguard work order. On August 29, Griffin's attorney sent another cease and desist letter, and the account was again flagged to note that all property preservation work should end. Despite this, on September 5, Al Issa returned to the home to perform further property preservation work.

Parsons alleges several encounters with a man whose name he could not remember at the deposition, but who he later named as "Mo." When Parsons first spoke to him, "Mo" told him that he "needed to take [his] stuff and get out and move out." When he encountered "Mo" again, "Mo" had accessed the home without Parsons's permission and later pushed open the door to the basement unit and took pictures of the unit before Parsons could give his permission. Parsons further alleges that some of his personal property was destroyed during "Mo's" visits. Other witnesses testified about this destruction. Each of the defendants still in the case denies removing or destroying any of Parsons's personal property.

## Discussion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A disputed material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record." *Mighty v. Safeguard Properties Mgmt., LLC*, No. 16 C 10815, 2018 WL 5619451, at *5 (N.D. Ill. Oct. 30, 2018); *see also* Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial responsibility of proving there is no genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Day v. N. Ind. Pub. Serv. Co.*, 987

4

F. Supp. 1105, 1109 (N.D. Ind. 1997). In determining a motion for summary judgment, courts view the facts "in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## A. Agency relationships

An overarching issue affecting many of the plaintiffs' claims is whether an agency relationship existed between the defendants. Safeguard, Ally, and Cenlar repeatedly argue that they cannot be held liable for the conduct of Alissa, which they say was merely an independent contractor of Safeguard. Although vicarious liability typically is not imposed upon a party that hires an independent contractor, it "may . . . be imposed for the actions of independent contractors where an agency relationship is established." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 719 N.E.2d 756, 765 (1999).

"A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Santana v. State Bd. of Elections*, 371 Ill. App. 3d 1044, 1054, 864 N.E.2d 944, 952 (2007). "An agent's authority may be either actual or apparent, and actual authority may be either express or implied." *Amigo's Inn, Inc. v. License Appeal Comm'n of City of Chicago*, 354 Ill. App. 3d 959, 965, 822 N.E.2d 107, 113 (2004). "Only the alleged principal's words and conduct, not those of the alleged agent, establish the agent's authority." *Id.*

"A person or entity that is appointed by an agent to perform functions assigned to the agent by the principal is known as a 'subagent.'" *Thakkar v. Ocwen Loan Servicing, LLC*, No. 15 C 10109, 2019 WL 2161544, at *7 (N.D. Ill. May 17, 2019); *see also*

*Restatement (Third) of Agency* § 3.15.  Agents authorized to do so may "appoint subagents to perform those tasks or functions the agent has undertaken to perform for the principal."  *Id.* (citing *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 33, 826 N.E.2d 1111, 1126 (2005)).  Consequently, "an action taken by a subagent carries the legal consequences for the principal that would follow were the action instead taken by the appointing agent."  *Id.* (citing *Restatement (Third) of Agency* § 3.15, cmt. d.)

The question of whether an agency or subagency relationship exists—along with the scope of the purported agent or subagent's authority—is a question of fact "based on the particular circumstances of the case."  *See AYH Holdings*, 357 Ill. App. 3d at 34, 826 N.E.2d at 1127.  Under Illinois law, that question is improper for summary judgment "unless the relationship is so clear as to be undisputed."  *Thakkar*, 2019 WL 2161544, at *5, *7; *see also AYH Holdings*, 357 Ill. App. 3d at 34, 826 N.E.2d at 1127; *Santana*, 371 Ill. App. 3d at 1054, 864 N.E.2d at 952.

In this case, there are genuine disputes regarding the existence and scope of the agency relationships.  Ally does not argue that Cenlar was prohibited from appointing a subagent, and Cenlar does not argue that Safeguard was prohibited from appointing a subagent.  *See Thakkar*, 2019 WL 2161544, at *7.  A jury could reasonably find that Safeguard, Ally, and Cenlar were linked through a cascade of agent and subagent relationships and therefore are each liable for Alissa's purported actions.  *See id.*  To the extent the defendants rely on this argument for summary judgment, it is rejected.

## B.    ICFA violation (Count 1)

Each defendant moves for summary judgment on Count 1, the alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA).  They

6

mainly argue that the plaintiffs do not qualify as "consumers" and cannot demonstrate that the alleged deceptions "occurred in the course of conduct involving trade or commerce."[3] *Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, at *6 (N.D. Ill. Oct. 6, 2015). Specifically, the defendants contend that the record is devoid of any evidence that shows a payment by the plaintiffs to the defendants, a contract between the parties, or any other business transaction.

"As its name indicates, [ICFA] is primarily concerned with protecting *consumers*." *Indus. Specialty Chemicals, Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995) (emphasis added). Under ICFA, a consumer is one "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Elder v. Coronet Ins. Co.*, 201 Ill. App. 3d 733, 750, 558 N.E.2d 1312, 1321 (Ill. App. Ct. 1990) (internal quotation mark omitted); *see also* 815 Ill. Comp. Stat. 505/1.

If the plaintiff is not a consumer within the meaning of ICFA, he may still make the claim if he can satisfy the consumer nexus test which "requires the plaintiff to have suffered damages resulting from conduct that is either directed toward the market or otherwise implicated consumer protection concerns." *Mighty*, 2018 WL 5619451, at *9 (internal quotation marks omitted). "Specifically, the plaintiff must show (1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the

---

[3] Alissa argues that the plaintiffs failed to meet the heightened pleading requirement under Federal Rule of Civil Procedure 9(b). Even if true, that is an argument appropriately made only on a motion to dismiss, not on a motion for summary judgment.

requested relief would serve the interest of the consumers." *Id.*

Griffin certainly qualifies as a consumer within the meaning of ICFA. She contracted for a mortgage with Ally's predecessor, and she used the proceeds of that mortgage to purchase the home. *See Thakkar*, 2019 WL 2161544, at *9 (concluding that plaintiff's uncle, "who bought the house [at issue] and took out the mortgage, was surely a consumer" under ICFA). Though the defendants note that Griffin did not directly contract with them, she needn't have. ICFA's definition of consumer does not "require that privity exist between the purchaser and the provider of the merchandise." *Elder*, 201 Ill App. 3d at 750, 558 N.E.2d at 132.

As for Parsons, he meets the elements of the consumer nexus test. The first element requires him to demonstrate that he was in a position like that of a consumer. It is undisputed that Parsons contracted with Griffin to lease the basement level of the home for use as a residence. And, at the time the relevant events occurred, Parsons lived at the home and was often the first to learn of the defendants' various actions. Thus, even if he did not contract with the defendants, at all relevant times "he was in the same position as an ordinary consumer." *See Thakkar*, 2019 WL 2161544, at *9.

The remaining elements of the consumer nexus test are also satisfied. The plaintiffs allege that the defendants participated in a scheme to take advantage of consumers. The plaintiffs have accused the defendants of: (1) conducting brief and exterior vacancy inspections to falsely declare properties vacant; (2) sending letters falsely advising borrowers that the property is vacant and giving only two business days to respond or risk having the property secured and winterized; (3) sending subcontractors to secure and winterize properties on the same day the letter is sent; (4)

breaking and entering into properties even when there are visible signs of occupancy; and (5) locking occupants out of their property even after they've asserted their rights. The plaintiffs claim that all of this was done to bully and intimidate them into abandoning their rights to the property.

If proven, this scheme would concern consumers beyond the plaintiffs because they allege these are general practices. And—because they allege the defendants entered the home without permission—the scheme also implicates consumer protection concerns. "[C]ourts have generally required some allegations of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues." *Credit Ins. Consultants, Inc. v. Gerling Glob. Reins. Corp. of Am.*, 210 F. Supp. 2d 980, 985 (N.D. Ill. 2002). "[H]ome invasions . . . plausibly present issues relating to public safety." *See Thakkar*, 2019 WL 2161544, at *10. Lastly, the plaintiffs' requested relief could be a deterrent against future misconduct by the defendants. *See id.* Because the record includes evidence that would allow a reasonable jury to rule in the plaintiffs' favor, summary judgment is denied on this count.

## C.     Trespass to real property and chattels (Count 2)

### 1.     Trespass to real property

Alissa argues that it did not interfere with the plaintiffs' possessory rights because it entered the property only after it was deemed vacant and upon orders from Safeguard. Further, each defendant argues that the mortgage authorized them to perform property preservation services. Under paragraph 9 of the mortgage, if the borrower "fails to perform the covenants and agreements" in the mortgage, the lender is authorized to "do and pay for whatever is reasonable or appropriate to protect [its]

interest in the Property…including securing and/or repairing the Property." Because Griffin defaulted on the mortgage—by failing to perform the covenant and agreements—the defendants argue that they were entitled to enter the property.

The plaintiffs contend that the mortgage does not absolve the defendants of trespass. In their view, Illinois law governs the right to possession of mortgaged real estate. Because the foreclosure was still pending, plaintiffs contend, defendants had no right to enter the home, lock the plaintiffs out, or refuse to restore access.

"A trespass is an invasion in the exclusive possession and physical condition of land." *Lyons v. State Farm Fire & Cas. Co.*, 349 Ill. App. 3d 404, 411, 811 N.E.2d 718, 725 (2004). "One can be liable in trespass for an intrusion by a . . . third [party] if he acts with knowledge that his conduct will, to a substantial degree of certainty, result in the intrusion." *Dietz v. Illinois Bell Tel. Co.*, 154 Ill. App. 3d 554, 559, 507 N.E.2d 24, 26 (1987). There is "a substantial difference between the right to possession for residential purposes, which the[ ] [foreclosure] statutes address, and the contractual right to enter" to protect a lender's interest in the property. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 57, 77 N.E.3d 50, 64 (holding that a mortgage provision allowing mortgagor "to enter property to make repairs if plaintiff fell into default," was unaffected by Illinois foreclosure law).

It's undisputed that Griffin fell behind on her loan payments and thereafter defaulted on her loan. That default would trigger Ally's right to property preservation services to protect its interest in the property and that right is unaffected by Illinois foreclosure law. *See id.* ¶ 57, 77 N.E.3d at 64. This does not mean, however, that defendants are entitled to summary judgment on this claim. Though the mortgage gave

Ally consent to enter the property, the plaintiffs argue that Alissa's actions were unreasonable. They allege—and the record includes evidence—that Alissa entered the home on multiple occasions while knowing it was occupied and, among other things, locked them out and destroyed some of their property. A reasonable jury could find that Alissa committed the alleged actions, that those actions were not reasonable, and as a result, they were not authorized by the mortgage.

### 2. Trespass to chattels

"Trespass to personal property involves an injury to or interferences with possession of chattel, with or without physical force." *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016). "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Id.*

Alissa argues that this trespass claim fails because there is no evidence that it dispossessed the plaintiffs of chattel. The plaintiffs allege that there was property damage that followed some or all of Alissa's visits. The record contains testimony describing this damage, and a reasonable jury could find that Alissa was responsible for it. Summary judgment is denied on this claim.

### D. Conversion (Count 3)

"Conversion is the unauthorized deprivation of property from the person entitled to its possession." *In re Estate of Yanni*, 2015 IL App (2d) 150108, ¶ 21, 48 N.E.3d 1161, 1166. Conversion is proven when a plaintiff demonstrates: "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's

absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." *Id.*

The defendants argue that the plaintiffs lack evidence to support certain elements of a conversion claim. In part, they assert that the plaintiffs fail to show that a demand for their property and fail to show that such a demand would have been futile.

Conversion claims require "a demand for possession, or it cannot be said that there has been a deprivation." *Hoffman v. Allstate Ins. Co.*, 85 Ill. App. 3d 631, 633–34, 407 N.E.2d 156, 158 (1980). "[A] demand must be a request for present delivery of the property, and must be in absolute, unequivocal terms." *Caterpillar Inc. v. Sturman Indus., Inc.*, No. 99 C 1201, 2005 WL 3132196, at *2 (C.D. Ill. Nov. 22, 2005) (internal quotation mark omitted). Moreover, the demand should be "reasonable in nature and sufficiently definite and complete to apprise the defendant of the specific property claimed." *Id.*

At the outset, the plaintiffs argue that they needn't have demanded possession of the property. First, they cite to *Landfield Finance Co. v. Feinerman*, 3 Ill. App. 3d 487, 490, 279 N.E.2d 30, 33 (1972), for the proposition that "one who knowingly takes possession of personal property which belongs to another is liable to the person whose property has been appropriated whether or not a demand is made for the return of such property." But, as noted by other Illinois courts, that portion of the opinion has been criticized. *Rybak v. Dressler*, 178 Ill. App. 3d 569, 588, 532 N.E.2d 1375, 1387 (1988) (citing cases). The Court further notes that demand for possession was not at issue in *Landfield,* as the plaintiffs there had made a demand for return of the property. *Landfield Fin. Co.*, 3 Ill. App. 3d at 490, 279 N.E.2d at 33.

Second, the plaintiffs argue that they needn't have demanded possession of the converted property because an independent act of conversion—trespass—had already occurred. Although a demand is unnecessary where "another independent action of conversion is established," *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 248, 561 N.E.2d 1245, 1253 (1990), this exception seems to be available only where "'the defendant had sold or otherwise disposed of the property in question and thus no longer had possession thereof, the rationale being that a demand for possession would be fruitless where the defendant no longer possesses the chattel and the law will not require the doing of a useless act.'" *Caterpillar Inc.*, 2005 WL 3132196, at *3 (quoting *Monroe Cty. Water Cooperative v. City of Waterloo,* 107 Ill. App. 3d 477, 437 N.E.2d 1237, 1240 (1982); *see also A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 132 Ill. App. 3d 655, 664, 477 N.E.2d 1326 (1985) (explaining that demand has been excused only in cases where the defendant sold property or otherwise disposed of it).

Finally, the plaintiffs offer an alternative argument: if they had demanded the return of the property, their demands would have been futile. There is no evidence in the record to support this proposition. The defendants are entitled to summary judgment is granted on this claim.

## E.     Intrusion upon seclusion (Count 4)

The plaintiffs' next claim is a claim for violation of privacy, specifically intrusion upon seclusion. To prevail on this claim, a plaintiff must establish that: "(1) an unauthorized intrusion into seclusion [occurred]; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney v. Chicago Pub. Sch.*,

13

407 Ill. App. 3d 358, 366-67, 943 N.E.2d 23, 32 (2010). "Examples of inherently private facts include a person's financial, medical, or sexual life, or a particularly private fact of an intimate, personal nature." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005) (alteration accepted; internal quotation marks omitted).

Safeguard, Ally, and Cenlar contend that the plaintiffs cannot prove certain of the elements needed to establish this claim. First, they argue that, because Griffin had defaulted on her loan, the intrusion was warranted by the mortgage. The Court overrules this argument. As explained earlier, a reasonable jury could find that the defendants' actions were not reasonable and therefore were not authorized by the mortgage.

Next, each defendant argues that the plaintiffs have failed to prove that Alissa intruded upon any private matter or disseminated any private information. Intrusion upon seclusion requires "some type of highly offensive prying into the physical boundaries or affairs of another person." *Acosta LLC*, 377 F. Supp. 2d at 650 (citing *Lovgren v. Citizens First. Nat'l Bank*, 126 Ill. 2d 411, 417, 534 N.E.2d 987, 989 (1989)). "The basis of the tort is not publication or publicity. Rather, the core of this tort is the offensive prying into the private domain of another." *Acosta*, 377 F. Supp. 2d at 650.

The plaintiffs contend that Alissa accessed Parsons's medical information. A witness testified that she saw what "appeared to be medical records scattered all over the floor of the living room and kitchen" along with mail and other items. That is more than a contention that "[a]n intrusion on personal space . . . automatically equate[s] to an intrusion on personal matters." *See Smith v. Fifth Third Mortg. Co.*, No. 15 C 5820, 2015 WL 6152848, at *3 (N.D. Ill. Oct. 19, 2015). There is, however, no evidence in the

record that Griffin's private information was accessed.  On this claim, the defendants are entitled to summary judgment as to Griffin but not as to Parsons.

## F.     Breach of contract (Count 5)

To recover for the breach of a contract, "a party must establish the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill. App. 3d 813, 823, 835 N.E.2d 61, 69 (2005) (internal quotation marks omitted).

Ally contends that the plaintiffs' breach of contract claim fails because the mortgage authorized it to perform property preservation services.  Because Griffin defaulted on her loan, Ally argues, she cannot claim that Alissa's entry was a trespass.  But—as noted above—though the mortgage gave Ally consent to enter the property, the plaintiffs argue that the actions Alissa took once it entered the property were unreasonable.  Therefore, a genuine dispute of material fact remains, and summary judgment is inappropriate on this claim.

## G.     Negligent hiring/retention (Counts 6, 7, and 8)

Both Ally and Cenlar contend that the plaintiffs' claims for negligent/retention are deficient because the record demonstrates that: (1) Ally did not have a contractual relationship with Safeguard and had no input into Cenlar's decisions regarding property preservation vendors; (2) Safeguard did not perform the property preservation services at issue; and (3) no alleged "unfitness" of Safeguard proximately caused the plaintiffs' injuries.  As explained above, there are genuine disputes regarding the existence and scope of an agency relationship between the defendants.  Those disputes have

"generally been found to be a question of fact based on the particular circumstances of the case and, accordingly, improperly determined on summary judgment." *Thakkar*, 2019 WL 2161544 at *7. Summary judgment is denied on each of these counts.

## H. Negligent hiring (Count 9)

To establish negligent hiring, a plaintiff must prove: "(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Doe v. Coe*, 2019 IL 123521, ¶ 41, 135 N.E.3d 1, 13.

Defendants assert that the negligent hiring/retention claims against Safeguard—based on its hiring of Mario Lopez and ML Property Inspections as one of its vendors—fail. The Court agrees. The plaintiffs have failed to explain how either Lopez's or ML Property Inspections' alleged unfitness was the proximate cause of their injury. The defendants are entitled to summary judgment on this claim.

## I. Fraudulent misrepresentation (Count 10)

Fraudulent misrepresentation requires: "(1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847, 920 N.E.2d 1161, 1166 (2009) (alterations accepted). The defendants assert that (1) there is no evidence that any of the defendants (aside from Alissa) made statements to the plaintiffs; (2) there is no evidence that Griffin was

induced to do anything based upon the defendants' statements; and (3) there is no evidence that Alissa wrote statements.

The record contains evidence that would allow a reasonable jury to conclude that the Alissa: (1) made false statements to Parsons (e.g., the two signs posted on the home); (2) knew these statements were false; (3) by doing so, intended to induce Parsons to abandon the property; and (4) succeeded in getting Parsons to abandon the property. Parsons was undoubtedly harmed by this, as he had nowhere to live. By contrast, there is no evidence in the record to support a fraudulent misrepresentation claim by Griffin; she does not even allege that she was induced by any purported misrepresentations. Therefore, defendants' motion for summary judgment on Count 10 is denied as to Parsons but granted as to Griffin.

## J.   Civil conspiracy (Count 11)

"Under Illinois law, a civil conspiracy is defined as: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 782 (N.D. Ill. 2008) (internal quotation marks omitted). The defendants argue that there is insufficient evidence to prove that they were engaged in a civil conspiracy because: (1) there is no testimony that the agreements between them were entered into for an unlawful purpose or a lawful purpose by unlawful means, and (2) there is no evidence of an over-arching agreement among them to commit unlawful acts.

"A conspiracy is almost never susceptible to direct proof." *McClure v. Owens*

17

*Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134, 720 N.E.2d 242, 258 (1999). Typically, a plaintiff must establish a conspiracy using "circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Id.* "If a civil conspiracy is shown by circumstantial evidence, however, that evidence must be clear and convincing." *Id.*

In this case, the plaintiffs allege that the defendants participated in a scheme to bully and intimidate consumers into abandoning their rights to the property. The plaintiffs have accused the defendants of scheming to: (1) inaccurately declare properties vacant; (2) sending a letter advising borrowers that the property is vacant; (3) sending subcontractors to secure and winterize properties on the same day the letter is sent or soon after; (4) breaking and entering into properties even when there are visible signs of occupancy; and (5) locking occupants out of their property even after they've asserted their rights. There is enough circumstantial evidence to allow a reasonable jury to conclude that the way in which these agreements were operationalized violated individuals' property rights. *Thakkar*, 2019 WL 2161544 at *14. The defendants are not entitled to summary judgment on this claim.

## K.    FDCPA violations (Count 12)

The Fair Debt Collection Practices Act (FDCPA) exists "to protect consumers from abusive, deceptive, and unfair debt collection practices." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). It primarily prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Naturally— given its name—the FDCPA applies only to debt collectors and only "to communications

made in connection with the collection of any debt." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018) (internal quotation marks omitted).

### 1. Debt collectors under 15 U.S.C. § 1692a

Several of the plaintiffs' allegations require that defendants meet the FDCPA's general definition of "debt collector." *See* 15 U.S.C. § 1692a. The defendants must either be a "person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or *who regularly collects or attempts to collect*, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6) (emphases added); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 888–89 (7th Cir. 2006) (recognizing that § 1692a(6) creates two general categories of debt collectors).

Safeguard and Alissa argue that they do not meet this definition because neither businesses' principal purpose is debt collection and neither regularly collects or attempts to collect debt. The Court agrees.

In *Schlaf*, the Seventh Circuit held that, without more, property preservation activity does not meet the definition of debt collection under the FDCPA. *Schlaf*, 899 F.3d at 468. In that case, Safeguard contracted with a mortgage servicer to perform property preservation services. *Id.* at 461. During inspections, Safeguard placed door hangers on an outside doorknob at the property. The door hangers asked the mortgagor to contact the mortgage servicer (a number was provided) but did not provide details about debt or demand payment of debt. *Id.* at 462–63. In finding that Safeguard was not a debt collector, the Seventh Circuit recognized that "[t]he FDCPA is aimed at curbing abuses by third-party debt-collection agents who are much more involved in

actual debt collection than Safeguard, whose primary purpose is property preservation." *Id.* at 469. "[I]ndirect action taken without reference to a debt is not sufficient to trigger the protections of the statute." *Fed. Nat'l Mortg. Ass'n v. Obradovich*, No. 14 C 4664, 2020 WL 2767578, at *9 (N.D. Ill. May 28, 2020) (citing *Schlaf,* 899 F.3d at 469).

With that in mind, Safeguard and Alissa are not debt collectors under the FDCPA's general definition. Nothing in the record supports a conclusion that their principal purpose was debt collection or that they regularly collected or attempted to collect debt *directly*. Nor does the record support the claim that these defendants regularly collected or attempted to collect debt *indirectly*. The fact that they secured and winterized the home does not make them indirect debt collectors; "such specific and very limited action" does not implicate the FDCPA's specific statutory concerns. *Schlaf*, 899 F.3d at 466.

The plaintiffs' other allegations—that Alissa threatened and harassed Parsons to leave the home and left the notes demanding that the plaintiffs move out—likewise are not evidence of indirect debt collection. The factors discussed in *Schlaf* support this conclusion. None of the alleged communications included a demand for payment, offered debt settlement or repayment options, referred to Griffins's debt, or even provided contact information to discuss debt. *Id.* at 468. Nor did the alleged communications come with a collection letter or notice of default. *Id.* Finally, the relationship between the plaintiffs and the defendants "arose out of the plaintiffs' defaulted debt only in the sense that [they order and perform inspections] at properties where mortgagors have defaulted on their payments." *See id.* at 467 (citation and internal quotation marks omitted).

20

The defendants do not argue that Cenlar is not a debt collector under the FDCPA, so the Court does not address that matter.

### 2. Debt collectors under 15 U.S.C. § 1692f(6)

Section 1692a(6) provides a separate and potentially more expansive definition of "debt collector." Under this provision, a debt collector "also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). Section 1692f(6) makes illegal the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

Safeguard and Alissa argue that they are not enforcers of security interests, but a reasonable jury could find otherwise. Both Safeguard and Alissa take actions with respect to property that is possessed by a third-party based on the orders of a creditor with a security interest. Thus, property preservation, like repossession, can amount to enforcement of a security interest. *See, e.g., Durandisse v. U.S. Auto Task Force*, No. 06 CIV. 2463DC, 2009 WL 2337133, at *3 (S.D.N.Y. July 30, 2009) (holding that "repossession companies may be held liable for violations of Section 1692f(6), but only if they engage in repossession" without a present right to do so and if they use a valid security interest) (citing cases). Moreover, Safeguard's greatest revenue line is its property preservation services line; property preservation includes securing property for the creditor if the property is deemed vacant. And Alissa testified that the only company

from which it took work was Safeguard, and that work was primarily in property preservation.

Safeguard also argues that the plaintiffs have failed to provide evidence that it used any instrumentality of interstate commerce to complete any of the property preservation activities in this case or to communicate with any of the plaintiffs. But the plaintiffs didn't need to prove that. The statute's plain words require only that debt collectors use an "instrumentality of interstate commerce or the mails" *in operating a business* that has the principal purpose of enforcing security interests. 15 U.S.C. § 1692a(6) (emphasis added); *see e.g., Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) ( "[A] party can qualify as a 'debt collector' either by using an 'instrumentality of interstate commerce or the mails' in operating a business that has the principal purpose of collecting debts or by 'regularly' attempting to collect debts."). There's ample evidence in the record that Safeguard uses instrumentalities of interstate commerce to operate its business.

A genuine dispute of fact remains regarding whether Alissa was directed to enter the property, change the locks, and winterize it. If true, those actions would violate section 1692f(6)'s prohibition against "[t]aking . . . any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest . . . or (C) the property is exempt by law from such dispossession or disablement." *See* 15 U.S.C. § 1692f(6). So, for the portions of this count that rely on § 1692f, summary judgment is denied.

## Conclusion

For the reasons stated above, the Court grants the defendants' motions for summary judgment in part and denies them in part [dkt. nos. 182, 186, and 187]. Summary judgment is granted in favor of all defendants against both plaintiffs on the conversion claim (Count 3); in favor of all defendants on Griffin's intrusion upon seclusion claim, but not Parsons's claim (Count 4); in favor of Safeguard on the negligent-hiring claim (Count 9); in favor of all defendants on Griffin's fraudulent misrepresentation claim, but not Parsons's claim (Count 10); and in favor of Safeguard and Alissa, but not the other defendants, on the portions of the FDCPA claim that rely on the general debt-collector definition found in 15 U.S.C. § 1692a (Count 12). The Court otherwise denies defendants' motions. In addition, plaintiff Kloster's claims are dismissed. The case is set for a telephone status hearing on October 22, 2020 at 9:40 a.m. to set a trial date and discuss the possibility of settlement, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 16, 2020